IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

DANIEL KEITH STEELE,

    Defendant.

Case No. 4:20-cv-1337

## COMPLAINT

Plaintiff, the United States, through its undersigned counsel, sets forth its complaint against the defendant Daniel Keith Steele and alleges as follows:

1. This civil action is brought by the United States to recover an unpaid civil penalty assessed against Steele for his willful failure to report his interests in certain foreign financial accounts timely, as required by 31 U.S.C. § 5314 and its implementing regulations (commonly referred to as an "FBAR penalty"), plus interest, failure to pay penalties and other additional amounts, such as administrative costs, that have accrued and continue to accrue, as provided by law, from the date of assessment until paid.

**Authorization for Suit**

2. The United States brings this suit under 31 U.S.C. § 3711(g)(4)(C) and in accordance with 31 U.S.C. § 5321(b)(2) at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Internal Revenue Service ("IRS") Office of Division Counsel, a delegate of the Secretary of Treasury of the United States.

1

## Jurisdiction and Venue

3. Jurisdiction over this action is conferred upon the district court by 28 U.S.C. §§ 1331, 1345, and 1355(a) because it arises under a federal statute, the United States is the plaintiff, and the action seeks to recover civil penalties assessed under 31 U.S.C. § 5321(a)(5).

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because Steele resides within this judicial district, and a substantial part of the events giving rise to the United States' claim occurred in this judicial district.

## Defendant

5. Daniel Keith Steele is a citizen of the United States of America.

6. Steele is currently incarcerated at the Federal Residential Reentry Facility in St. Louis, Missouri. Steele is married to Judy D. Steele.

## Background Facts

7. During 2012, Steele engaged in a scheme to defraud and to obtain money and property from domestic investors by means of material false and fraudulent pretenses, representations, and promises.

8. Steele led these investors to believe that he had invested their funds in foreign currency exchange markets and that those investments resulted in positive net returns.

9. In fact, Steele did not invest a sizeable portion of the investors' funds in any investment, and the investments did not generating the represented returns.

10. Steele solicited at least 24 potential investors to invest approximately $2.02 million in one or more of the following pooled investment vehicles: (1) Steele Management LLC; (2) Champion Management, a.k.a. Champion Management Int.; and (3) Oracle Forex Fund, LP (together, the "Steele Companies").

11. During 2012, Steele was the owner, operator, and manager of each of the Steele Companies.

12. During 2012, Steele deposited the investors' funds in domestic bank accounts controlled by himself and his wife, Judy Steele.

13. Steele represented that funds contributed by investors would be invested by Steele through one or more of the Steele Companies.

14. Steele represented that the funds would be traded on foreign currency exchange markets, and that investors should expect Steele's trading activities to yield monthly returns ranging between 12.776% and 28.7%.

15. Steele did not intend to engage in foreign currency trading with all of the funds provided to him by investors.

16. Of the at least $2.02 million solicited by Steele and conveyed to Steele or the Steele Companies by investors, only $1,259,036.00 was ever transferred to any other party for the purpose of being used in foreign currency trading.

17. Steele used the investors' funds he did not use for foreign currency trading on their behalf for his personal use or for the personal use of others, including the purchase of automobiles for Steele and Steele's family members and the repayment of prior investors with funds contributed by later investors.

18. For example, in June 2012, Steele and his family went on a weeklong luxury cruise trip in Alaska.

19. Steele paid for the trip referenced in the immediately preceding paragraph with $16,000 of misappropriated funds from investors.

20. Steele issued false reports to investors showing falsely inflated returns on their investments.

21. Steele's foreign currency trading on behalf of investors either: 1) generated trading losses; 2) generated no gains; or 3) resulted in profits far less than what was reported to investors by Steele.

22. The Missouri Secretary of State investigated Steele for his fraudulent foreign currency trading on behalf of investors.

23. In the course of the investigation referenced in the immediately preceding paragraph, Steele prepared and provided to representatives of the Missouri Secretary of State false bank account statements.

24. Steele submitted the false bank account statements referenced in the immediately preceding paragraph to representatives of the Missouri Secretary of State to forestall detection of the crimes for which he was being investigated.

25. On September 25, 2013, the U.S. Commodity Futures Trading Commission ("CFTC"), in part as a result of events related above, filed a complaint against Steele seeking injunctive relief and the imposition of civil penalties for violations of the Commodity Exchange Act and regulations promulgated by the CFTC. *See U.S. Commodity Futures Trading Commission v. Daniel K. Steele, et al.*, Case No. 4:13-cv-01900-RLW (E.D. Mo. 2014) – Docket No. 1.

26. On December 14, 2014, the CFTC obtained a judgment against Steele, permanently enjoining him from engaging in the trading of any commodity, ordering him to pay restitution of $1,544,722.81, and ordering him to pay a civil monetary penalty of $1,000,000. *Id.* – Docket No. 68.

27. On October 7, 2015, in part as a result of events related above, Steele was indicted


by the U.S. Attorney for the Eastern District of Missouri on one count of mail fraud, four counts of wire fraud, and two counts of unlawful monetary transactions. *See United States v. Daniel Keith Steele*, Case No. 4:15-cr-00460-HEA (E.D. Mo. 2016) - Docket No. 1.

28. On October 3, 2016, Steele pleaded guilty to one count of mail fraud and four counts of wire fraud. *Id.* – Docket No. 61.

29. On March 29, 2017, Steele was sentenced to a term of 84 months of imprisonment and ordered to pay restitution of $1,491,593.03.

### Steele Willfully Failed to Report His Interest in a Foreign Bank Account

30. Section 5314 of Title 31 of the United States Code authorizes the Secretary of the Treasury to require United States citizens or residents ("U.S. persons") to file reports when they make a transaction or maintain a relationship for any person with a foreign financial agency. *See* 31 U.S.C. § 5314(a).

31. Under the implementing regulations to § 5314, "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" to the IRS "for each year in which such relationship exists . . . [on] a reporting form prescribed under 31 U.S.C. § 5314." *See* 31 C.F.R. § 1010.350(a).

32. To fulfill the reporting requirement imposed under 31 U.S.C. § 5314 for calendar year 2012, a U.S. person who had a financial interest in, or signature or other authority over, a foreign bank, securities, or other financial account was required to report the interest to the IRS by filing a Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR," by June 30 of the following year if the aggregate balance of such account(s)

exceeded, at any time during 2012, $10,000. *See* 31 C.F.R. §§ 1010.306(c) and 1010.350(a) (formerly, 31 C.F.R. §§ 103.24(a) and 103.27(c)(2010)).

33. During or before 2012, in furtherance of the scheme identified above, Steele opened at least four bank accounts at MIG Bank in Lausanne, Switzerland under the names of Daniel Keith Steele and Judy Steele.

34. During 2012, Steele deposited funds from investors in the scheme identified above into an account ending in **6956 at MIG Bank that he opened and maintained in his name and that of his wife, Judy Steele.

35. Steele did not inform the investors he received funds from that he intended to transfer their funds to accounts at a foreign financial institution held in his name.

36. During 2012, Steele had access to and received regular updates from MIG Bank on the status and value of all closed and open foreign currency exchange transactions in the MIG Bank accounts controlled by Steele.

37. Steele received the account information referenced in the immediately preceding paragraph in the form of daily account statements, month-end account statements, as well as through regular online access to MIG Bank's trading platform.

38. In November 2012, Steele transferred $160,000 from MIG Bank account ending **6956 to open a second MIG Bank account ending in **9513 owned and/or controlled by Steele and Judy Steele.

39. In November 2012, Steele transferred $160,000 from MIG Bank account ending **6956 to open a third MIG Bank account ending in **9514 owned and/or controlled by Steele and Judy Steele.

40. During 2012, Steele owned and/or controlled a fourth account at MIG Bank ending in \*\*4900 0.

41. During 2012, Steele wired at least $744,336 of investors' funds to accounts owned or controlled by him at MIG Bank, referenced above in paragraphs 34, 38, 39, and 40, for the purported purpose of foreign currency exchange trading.

42. Before opening the financial accounts described above in paragraphs 34, 38, 39, and 40 at MIG Bank, Steele had no personal or financial ties with Switzerland.

43. Steele has never visited Switzerland.

44. Steele was self-employed as a construction worker prior to engaging in foreign currency trading.

45. Steele had no professional education or professional experience with investing prior to accepting investments from third party investors.

46. As of the filing date of this complaint, Steele has not filed a 2012 individual federal income tax return.

47. Steele did not seek professional advice about his tax or reporting obligations for his foreign financial accounts.

48. During 2012, Steele had a financial interest one or more foreign bank, securities, or other financial accounts at MIG Bank, in which the aggregate balance exceeded $10,000.

49. Steele was required to report his interest in one or more foreign bank, securities, or other financial accounts for the 2012 calendar year, to the United States by submitting an FBAR by June 30, 2013.

50. For the reasons described above, Steele willfully failed to file an FBAR for the 2012 year by June 30, 2013.

51.     As of the filing date of this complaint, Steele has not filed a 2012 FBAR.

**Claim for Relief**

52.     Section 5321(a)(5) of Title 31 U.S.C. provides for the imposition of civil penalties against any person who fails to comply with the FBAR reporting requirements under 31 U.S.C. § 5314.

53.     In the case of any person who willfully violates the FBAR reporting requirements, *inter alia*, by failing to file a timely FBAR, disclosing the existence of a foreign financial account or any other identifying information required to be disclosed with regard to said account, the maximum amount of the penalty that may be assessed for such violation is the greater of: *(i)* $100,000; or *(ii)* 50% of the balance in the account at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C), (D).

54.     On September 26, 2018, a delegate of the Secretary of the Treasury timely made an FBAR penalty assessment, pursuant to 31 U.S.C. § 5321, against Steele in the amount of $100,000, related to his willful failure to submit a FBAR for his MIG Bank account ending in **6956 for the year ending December 31, 2012.

55.     A delegate of the Secretary of the Treasury gave Steele notice of the FBAR penalty assessment identified in paragraph 54.

56.     In addition to the principal amount of the assessments described in paragraph 54 above, Steele is liable for a late-payment penalty pursuant to 31 U.S.C. § 3717(e)(2) and 31 Code of Federal Regulations § 5.5(a), and interest accruing pursuant to law.

57.     Despite notice and demand for payment of the FBAR penalty assessed for the 2012 calendar year, Steele has neglected, failed, or refused to pay in full this assessment, and there remains due and owing from Steele the sum of $113,961.65, as of September 23, 2020, plus

accrued interest, penalties, and other statutory additions as provided by law, incurred since September 23, 2020.

WHEREFORE, plaintiff the United States requests that this Court enter judgment in its favor as follows:

a. Enter a money judgment in favor of the United States and against defendant Daniel Keith Steele for the unpaid willful FBAR penalty liability pursuant to 31 U.S.C. § 5321(a)(5) for the 2012 calendar year in the total amount of $113,961.65, plus interest and penalties authorized by 31 U.S.C. § 3717(c)(2) and 31 C.F.R. § 5.5(a) and other statutory additions as provided by law accruing after September 23, 2020, until the judgment is paid, and

b. Award the United States its costs in bringing this action and such other and further relief as the Court deems just and proper.

Dated: September 24, 2020

JEFFREY B. JENSEN
United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Julian T. A. Lee*
JULIAN T. A. LEE
NY Bar Number: 4523684
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C. 20044
202-307-6140 (o)
202-514-6770 (f)
Julian.Lee@usdoj.gov
*Attorney for the United States*